1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    CARPENTERS PENSION TRUST FUND          Case No.  20-cv-01778-EMC
     FOR NORTHERN CALIFORNIA, et al.,
8
              Plaintiffs,                   **ORDER GRANTING PLAINTIFFS'**
9                                           **MOTION FOR DEFAULT JUDGMENT**
          v.                                **AGAINST DEFENDANT MCKEAGUE**
10
                                            Docket No. 26
     MARCELLINA HERNANDEZ, et al.,
11
              Defendants.
12

13

14         Plaintiffs are the Carpenters Pension Trust Fund for Northern California and the

15  Carpenters Annuity Trust Fund for Northern California.  They have filed an interpleader complaint

16  against Defendants Marcellina Hernandez and Charlotte McKeague.  Currently pending before the

17  Court is Plaintiffs' motion for default judgment as to Ms. McKeague.  Having considered the

18  papers submitted, the Court hereby **GRANTS** Plaintiffs' motion for relief, as described below.

19                  I.        FACTUAL & PROCEDURAL BACKGROUND

20         In their interpleader complaint, the Trust Funds have alleged as follows.

21      •  Michael Sanchez Hernandez was a participant in both Trust Funds.  *See* Compl. ¶

22         7; *see also* Price Decl. ¶ 2.

23      •  On May 6, 2005, Mr. Hernandez submitted a form to the Trust Funds naming his

24         mother, Marcellina Hernandez, as his beneficiary.  *See* Compl. ¶ 7.

25      •  On October 31, 2018, at or about 1:00 p.m., Mr. Hernandez passed away with his

26         girlfriend, Charlotte McKeague, present.  *See* Compl. ¶ 8.

27      •  The death certificate for Mr. Hernandez stated that his death resulted from

28         intoxication, blunt force injuries, obstruction of respiration, and drug-induced

United States District Court
Northern District of California

United States District Court
Northern District of California

psychosis.  *See* Compl. ¶ 8.

- Just a few hours before Mr. Hernandez died, the Trust Funds received a new form via email, naming Ms. McKeague as his beneficiary.  *See* Compl. ¶ 9.

- After Mr. Hernandez's death, both Ms. Hernandez and Ms. McKeague contacted the Trust Funds about his benefits.  *See* Compl. ¶ 10.

- The Trust Funds informed Ms. Hernandez and Ms. McKeague about the competing claims for Mr. Hernandez's benefits but neither withdrew her claim to the benefits. *See* Compl. ¶¶ 11-12.

- The Pension Trust Fund benefits are valued at $76,882.32 (payable over 36 months).  *See* Compl. ¶ 13; *see also* Price Decl. ¶ 3.

- The Annuity Trust Fund benefits were valued (as of March 4, 2020) at $53,054.19. *See* Compl. ¶ 14; *see also* Price Decl. ¶ 4 (testifying that, as of October 13, 2020, the benefits were valued at $59,284.21).

- The Trust Funds have no interest in the benefits other than complying with their obligation to pay the benefits to the proper beneficiary.  *See* Compl. ¶ 2.

Ms. Hernandez answered the Trust Funds' complaint in April 2020.  *See* Docket No. 12 (answer and cross-claim).  In the same pleading, she also asserted a cross-claim against Ms. McKeague, alleging that

> any purported change of beneficiary from Defendant Marcellina Hernandez to Defendant Charlotte McKeague was and is ineffective, violative of the terms and conditions of the Plans Documents and/or fraudulent in that Ms. McKeague completed the form without Mr. Hernandez's knowledge or agreement and the purported signature of Mr. Hernandez set forth therein is a forgery.  Furthermore, Mr. Hernandez was unconscious and incapacitated at the time the form purporting to change his beneficiary was sent to the Trust Funds.

Cross-Claim ¶ 24.

Several months later, in July 2020, the Trust Funds filed a waiver of service of summons that Ms. McKeague had executed.  *See* Docket No. 20 (waiver).  In the waiver, Ms. McKeague acknowledged her understanding that she was obligated to respond to the Trust Funds' complaint "within 60 days from 05/26/2020, the date when this request was sent," and that, "[i]f I fail to do

so, a default judgment will be entered against me."  Docket No. 20.

In September 2020, after Ms. McKeague failed to respond to the complaint, the Trust Funds moved the Clerk of the Court to enter Ms. McKeague's default.  A copy of the motion was served on Ms. McKeague.  *See* Docket No. 23 (motion).  The Clerk of the Court entered Ms. McKeague's default on September 21, 2020.  *See* Docket No. 25 (notice).  Thereafter, the Trust Funds filed the currently pending motion for default judgment as to Ms. McKeague.  The motion has been served on Ms. McKeague.  *See* Docket No. 26 (motion).  The Court has received no opposition to the motion for default judgment.

## II.   DISCUSSION

A.    Service of Summons and Complaint

As an initial matter, the Court considers the matter of service of the summons and complaint on Ms. McKeague.

Federal Rule of Civil Procedure 4(d) provides in relevant part that  "[a]n individual . . . that is subject to service under Rule 4(e) . . . has a duty to avoid unnecessary expenses of serving the summons.  The plaintiff may notify such a defendant that an action has been commenced and request that the defendant waive service of a summons."  Fed. R. Civ. P. 4(d).  The notice/request for waiver must meet certain requirements – *e.g.*, it must provide a copy of the complaint and a waiver form; it must inform the defendant of the consequences of waiving and not waiving service; and it must give the defendant at least 30 days to return the waiver.  *See* Fed. R. Civ. P. 4(d)(1).  If the defendant timely returns the waiver, then she "need not serve an answer to the complaint until 60 days after the request was sent."  Fed. R. Civ. P. 4(d)(3).

As indicated above, the Trust Funds received a waiver from Ms. McKeague and filed a copy of the waiver with the Court.  It appears that the Trust Funds complied with Rule 4(d), and the waiver does not appear to have any deficiencies.  Accordingly, "proof of service [of the summons and complaint] is not required" and the summons and complaint are effectively deemed "served at the time of filing the waiver."  Fed. R. Civ. P. 4(d)(4).

B.    Merits of Motion for Default Judgment

As noted above, the Clerk of the Court entered Ms. McKeague's default on September 21,

2020.  *See* Docket No. 25 (notice).  After entry of default, a court may grant a default judgment on the merits of the case.  *See* Fed. R. Civ. P. 55.  "The district court's decision whether to enter a default judgment is a discretionary one."  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir.1980).  A court may consider the following factors in exercising such discretion:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Because default has already been entered in this case, the Court must construe as true all of "the factual allegations of the complaint, except those relating to the amount of damages."  *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).  The Court may also consider evidence submitted in conjunction with the motion for default judgment.  *Cf.* Fed. R. Civ. P. 55 (noting that a "court may conduct hearings . . . when, to enter or effectuate judgment, it needs to [*e.g.*] establish the truth of any allegation by evidence" or "investigate any other matter").

The Court finds that the *Eitel* factors weigh in favor of granting default judgment.  For example, as to the first factor, if the motion for default judgment were to be denied, then the Trust Funds would likely be prejudiced as they would be stymied from moving forward with this litigation – even though they have no real interest in the case other than ensuring that the benefits go to the proper beneficiary.  *See Walters v. Shaw/Guehnemann Corp.*, No. 03-cv-04058, 2004 U.S. Dist. LEXIS 11992, at *7 (N.D. Cal. Apr. 15, 2004) ("To deny plaintiff's motion [for default judgment] would leave them without a remedy.  Prejudice is also likely in light of the merits of their claims."); *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery.").

As for the fourth *Eitel* factor, the Trust Funds are not asking for money damages at all – as noted above, they only wish the funds at issue to go to the proper beneficiary.  *See Pepsico*, 238 F.Supp.2d at 1176 (stating that "the court must consider the amount of money at stake in relation

to the seriousness of Defendant's conduct").

As to the fifth, sixth, and seventh *Eitel* factors, because Ms. McKeague has not filed an answer to the complaint, there is nothing to suggest that there is a possibility of a dispute concerning material facts.  Nor is there any indication that Ms. McKeague's default was due to excusable neglect.  And while public policy favors decisions on the merits, *see Eitel*, 782 F.2d at 1472, Ms. McKeague's choice not to defend this action renders a decision on the merits "impractical, if not impossible."  *PepsiCo*, 238 F. Supp. 2d at 1177.

Finally, on the second and third *Eitel* factors – *i.e.*, the merits of the Trust Funds' substantive claims and the sufficiency of those claims – the Ninth Circuit has recognized that an ERISA fiduciary may bring an interpleader action pursuant to 29 U.S.C. § 1132(a)(3)(B)(ii).[1]  *See Aetna Life Ins. Co. v. Bayona*, 223 F.3d 1030, 1034 (9th Cir. 2000) ("hold[ing] that interpleader is a cognizable action under ERISA section 1132(a)(3)(B)(ii)"); *see also Metro. Life Ins. Co. v. Marsh*, 119 F.3d 415, 418 (6th Cir. 1997) (noting the same).

Accordingly, the Court grants the Trust Funds' motion for default judgment.

C.   Relief

The only issue remaining is what relief should be issued.  The Trust Funds' requested relief does not extend beyond that sought in their complaint.  In addition, the relief requested is generally consistent with an interpleader action.  Accordingly, the Court grants the main relief sought.  More specifically, the Court orders as follows:

a.   Pursuant to ERISA, 29 U.S.C. § 1132(a)(3)(B)(ii) and Federal Rules of Civil Procedure 22 and 67, the Pension Trust Fund shall deposit with the Court a check in the amount of $76,882.32 (made payable to the Clerk of the Court), representing the entirety of Mr. Hernandez's pension benefits.  The deposit shall be made by November 30, 2020.

b.   The Annuity Trust Fund shall value Mr. Hernandez's annuity benefits as of

---

[1] Under § 1132(a)(3)(B)(ii), a civil action may be brought by an ERISA participant, beneficiary, or fiduciary to obtain equitable relief to enforce the terms of the plan.  Here, the Trust Funds have plan rules regarding designation of beneficiaries.  *See* Price Decl. ¶ 5 & Exs. A-B.

United States District Court
Northern District of California

November 25, 2020 (the "Valuation Date").  By November 30, 2020, pursuant to ERISA, 29 U.S.C. § 1132(a)(3)(B)(ii) and Federal Rules of Civil Procedure 22 and 67, the Annuity Trust Fund shall deposit a check in the valuation amount (made payable to the Clerk of the Court), representing the entirety of Mr. Hernandez's annuity benefits as valued by the Trust Fund as of the Valuation Date.

c.    By November 30, 2020, the Trust Funds shall also file a declaration with the Court certifying that both deposits were made and stating the valuation of the annuity benefits.  By the same date, the Trust Funds shall serve the declaration on Ms. Hernandez and Ms. McKeague and shall file a proof of service certifying such.

d.    The Court shall give Ms. Hernandez and Ms. McKeague until December 10, 2020, to file an objection to the valuation of the annuity benefits.

e.    If no objection is filed on December 10, 2020, then the Court shall dismiss the Trust Funds from the case and order that the Trust Funds, their administrators, employees, agents, and other officers be discharged from any and all liability on account of the claims of Ms. Hernandez and/or Ms. McKeague to the above-described benefit payments (*i.e.*, the funds ordered deposited with the Court).

D.    Service of the Cross-Claim

Because this order contemplates that the Trust Funds will be dismissed from the case, that leaves only Ms. Hernandez's cross-claim against Ms. McKeague.  The joint case management conference indicates that Ms. Hernandez recently obtained an updated address for Ms. McKeague for purposes of service.  *See* Docket No. 27 (Joint CMC St. at 2) (stating that "it is [Ms.] Hernandez's understanding that [the address Ms. McKeague provided to the Trust Funds] is for mailing only and is not [her] current residential address that can be utilized for personal service"; adding that, on November 9, 2020, Ms. Hernandez obtained an updated address for Ms. McKeague in Fairfield).  The Court orders Ms. Hernandez to effect service within 30 days and to file a proof of service certifying that service has been made.

III.    **CONCLUSION**

For the foregoing reasons, the Court grants the Trust Funds' motion for default judgment and orders the relief described above.  Plaintiffs are directed to serve this order on Ms. McKeague and to file a proof of service certifying that service has been made.

This order disposes of Docket No. 26.


**IT IS SO ORDERED**.


Dated: November 19, 2020

_____
EDWARD M. CHEN
United States District Judge